(C. D. 190)

HERMAN WEBER *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 10, 1939)

*Sharretts & Hillis (Edward P. Sharretts* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Marcus Higginbotham, Jr.,* special attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; SULLIVAN, J., concurring

McCLELLAND, Presiding Judge: This protest is directed against the assessment of duty made by the collector of customs on merchandise described on the invoice as "ebonite dust" at the rate of 35 per centum ad valorem under the provision in paragraph 1537 (b) of the Tariff Act of 1930 for "manufactures composed wholly or in chief value of india rubber known as 'hard rubber,' not specially provided for, finished or unfinished."

There are three alternative claims in the protest: The first is for duty at the rate of 25 per centum ad valorem under the provision in paragraph 1537 (b), *supra,* for manufactures of india rubber or of which india rubber is the component material of chief value, not specially provided for. The second alternative claim is for duty at the rate of 20 per centum ad valorem under the provision in paragraph 1558 for nonenumerated manufactured articles, and the third claim is for free entry under the provision of paragraph 1697 for "scrap or refuse india rubber and gutta-percha fit only for remanufacture."

The record before us consists of the record in the case of *Herman Weber* v. *United States,* the decision of this court in which case is reported in T. D. 48248, the decision of the Court of Customs and Patent Appeals upon appeal to that tribunal being reported in 24

C. C. P. A. 349, T. D. 48803, a deposition taken under commission issued out of this court of John E. Ferguson, shown to be the manufacturer of the merchandise in issue together with two exhibits attached thereto and the testimony of Joseph O. Thorp given at the trial of the present issue.

From the record as a whole the following facts may be taken as undisputed: The merchandise consists of material known as hard-rubber dust. It is made from waste rubber and sulphur, the waste rubber being old inner tubes from tires. The method of manufacture as described by Mr. Ferguson in the deposition is as follows:

This hard rubber dust was made from waste rubber and sulphur. The material is sorted, cleaned, ground to a powder on roller mills, mixed with sulphur, put into trays, vulcanized to the form of a hard cake or biscuit in steam vulcanizing pans, taken out of the pans, crushed roughly by a disintegrator, put onto small roller mills, ground to a fine powder, cooled, sieved, and packed for delivery.

In his deposition the witness also stated in answer to one of the interrogatories that—

* * * on occasions when running short of Goodyear tubes we used a proportion of raw rubber and sulphur, in order to make up the weight and quality of the batch.

The record indicates that the material is used principally as an adulterant in the making of hard-rubber products such as panels, fountain-pen cases, etc.

Our first inquiry must be directed to the question of the correctness of the collector's classification.

It is the contention of the plaintiff that prior to being ground into dust the merchandise had not reached the stage where it became hard rubber. It is the contention of the Government that when the merchandise reached the stage of having been vulcanized to the form of hard cake or biscuit in steam vulcanizing pans as described by Mr. Ferguson in the deposition it had become in fact hard rubber.

Hard rubber is defined in Webster's New International Dictionary as follows:

Firm and relatively inelastic vulcanized rubber, obtained by heating crude rubber with a large amount of sulphur (usually 30–50 percent). It takes a high polish, and, being softened by heat, can be molded.

A sample of the "hard cake or biscuit" from which the imported material is made accompanied the commission and was received in evidence as part of Exhibit 2. It consists of a piece of material, black, relatively light in weight, and of such structure that it may be broken off in small pieces by the fingers.

The witness Thorp, who was evidently well qualified, testified both as to the manufacture and use of hard rubber, and stated that hard-rubber dust may be produced in numerous ways. In general, however,

these methods are, first, by using crude rubber, adding sawdust to it, and sulphur, and some other vulcanizing agent, and vulcanizing it. When vulcanized by heating to the correct hardness this product is ground up into dust. The second method is the method described by the witness Ferguson, and the third method is by grinding up hard-rubber articles, such as old telephone receivers, waste from molded articles, old fountain pens, etc. In each case, however, Mr. Thorp stated that the product produced from the vulcanization of these ingredients could not be used for any other purpose than the production of hard-rubber dust.

Shown plaintiff's Exhibit 2 referred to above, Mr. Thorp testified that it was what is known as an intermediate product used only for making of hard rubber dust and not of finished hard rubber.

From the foregoing we are convinced that the merchandise at bar was not manufactured from hard rubber within the meaning of that term as used in paragraph 1537 (b), *supra,* and the collector's classification must therefore be held to have been erroneous.

The claim made by plaintiff for free entry of the merchandise under paragraph 1697 as scrap or refuse india rubber fit only for remanufacture, we hold to be untenable. It is obvious from a description of the process given by Mr. Ferguson that while the merchandise has been produced in part from scrap or refuse india rubber, nevertheless the process of producing the hard cake or biscuit was a process of manufacture which took the merchandise out of the class of scrap or refuse rubber fit only for remanufacture.

Consideration of the record as a whole leads to the conclusion that the merchandise at bar is a manufacture of which india rubber is the component material of chief value. The deposition of Mr. Ferguson, which is uncontradicted, establishes that the merchandise is composed in chief value of scrap india rubber, to which occasionally raw india rubber had been added. That it is a manufacture is obvious from the fact that it possesses a new name, character, and use different from the materials of which it is composed. The claim in the protest for duty at the rate of 25 per centum ad valorem under paragraph 1537 (b) of the Tariff Act of 1930 is therefore sustained.

Judgment will issue accordingly.

#### CONCURRING OPINION

SULLIVAN, Judge: I still adhere to our opinion in *Herman Weber* v. *United States,* T. D. 48248, 69 Treas. Dec. 631, which was affirmed by the Court of Customs and Patent Appeals in 24 C. C. P. A. 349, T. D. 48803. The facts are somewhat different in the case at bar, although the distinction is not clear.

Under the circumstances and the facts disclosed in the present record, while adhering to the judgment in the *Weber* case, *supra,* I concur in the conclusion reached by Judge McClelland.

The opinion of Judge McClelland does not in any way attempt to reverse the decision in the *Weber* case, *supra.* It merely asserts that the facts in the case at bar are somewhat different from those in the prior case